UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT JOHN BULMER,

    Defendant.
_____/

Case No. 14-20031
HON. DENISE PAGE HOOD

**ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [ECF No. 39]**

## I. Introduction

On January 18, 2021, Defendant filed a Motion for Compassionate Release (the "Motion") [ECF No. 39], requesting that the Court: (1) reduce his sentence to time-served; (2) order his early release from prison; (3) convert the unserved balance of his sentence to home confinement; and (4) allow him to quarantine at home rather than at FCI Elkton. Defendant asserts that he has medical conditions that render him particularly susceptible to severe complications from COVID-19. The Motion has been fully briefed. For the reasons that follow, the Court denies the Motion.

## II. Background

According to the United States Probation Department, Defendant has a sexual interest in children and a pedophilia diagnosis. (Presentence Investigation Report

("PSR") ¶72.) On a Facebook page, prior to his arrest in this case, Defendant identified his interests as incest, incest family, and father-daughter incest. (PSR ¶ 24.) At least three times, he posted a message on Craigslist seeking a mother who would permit him to engage in sexual acts with her daughter. (PSR ¶ 27.) In one of his advertisements, he sought "a single mommy with a daughter 11 to 15 that would let me date her and you at the same time." (PSR ¶ 20.) An undercover officer responded to Defendant and posed as the mother of a 13 year-old girl. Defendant told the officer what sex acts he wanted to engage in with the child, and they agreed to meet.

    Defendant was arrested when he arrived at the location he and the undercover officer had agreed upon. Defendant admitted that he had come to the location to meet a mother and her 13 year-old daughter for sex. (PSR ¶ 27.) He stated that he had a laptop at his residence that he used to view child pornography. He also admitted that the advertisement he posted on Craigslist on December 9, 2013 was the third advertisement that he had created seeking a mother/daughter incest relationship. A search of Defendant's electronic devices recovered 176 images and two videos of child pornography. (PSR ¶ 28.) His child pornography collection included depictions of prepubescent children engaged in sex acts with adults, bondage and other depictions of violence, and a subsequent search of his electronic devices recovered child pornography. (PSR ¶ 28.)

Defendant has been detained since January 9, 2014, after a criminal complaint charged him with violating 18 U.S.C. § 2442(b).  Defendant ultimately was charged in a three-count superseding indictment for violating 18 U.S.C. § 2422(b), 18 U.S.C. § 2252A(a)(2), and 18 U.S.C. § 2252A(a)(5)(B).  On July 21, 2015, he pleaded guilty to two counts pursuant to a Rule 11 agreement (Count One – enticement of a minor, in violation of 18 U.S.C. § 2422(b), and Count Two – receipt of child pornography, in violation of U.S.C. § 2252A(a)(2)). Count One carried a mandatory minimum sentence of at least 120 months.

On November 19, 2015, this Court sentenced Defendant to an incarceration term of 135 months, with both counts to run concurrently, and a supervised release for a term of five years on each count.  The Court recommended that Defendant participate in the Bureau of Prison's ("BOP") drug treatment and sex offender treatment programs.  Defendant has served more than seven years in prison. Defendant's current release date is September 8, 2023, with good time credit.  Based on that date, Defendant has served approximately 73% of his sentence.

Defendant is now 36 years old.  Defendant's PSR from 2015 noted his 2013 diagnosis of a rare form of Crohn's disease, a condition that resulted in multiple hospitalizations of five or more days and multiple prescriptions during that year. PSR ¶ 68. He suffered from constant stomach pain with organic digestive inflammatory

bowel issues. PSR ¶ 68. BOP medical records reflect that Defendant's Crohn's disease is severe, that he has needed hospitalization, and that he has a history of receiving medications to treat it.

The PSR listed Defendant's height and weight, respectively, as 5'11" and 230 pounds. PSR ¶ 68. Defendant states that, based on his last measured weight by the BOP on December 14, 2020 was 301 pounds and his BMI was 41.8. Those figures put him in the category of morbidly obese. Defendant reports that his BMI has been above 40 since at least 2018.

Defendant is housed at FCI Elkton, where nine prisoners have died of COVID-19 and approximately 63% of that prison's population had contracted COVID-19 at one point in July 2020. It is undisputed that Defendant exhausted his administrative remedies, as he requested – and the FCI Elkton warden denied his request for – compassionate release.

### III. Analysis

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A court also must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. Although this Court and many others previously

believed that U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) constituted the "applicable policy statement[]" with which courts must comply under 18 U.S.C. § 3582(c)(1)(A), the Sixth Circuit recently established that Section 1B1.13 is not applicable, nor is it to be considered by the Court, when determining whether there are extraordinary and compelling reasons warranting a reduction in sentence. *See, e.g., United States v. Hampton*, No. 20-3649 (6th Cir. Jan. 19, 2021); *see also United States v. Elias*, No. 20-3654 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

"Extraordinary" is defined as "exceptional to a very marked extent." Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Id.* A court in the Eastern District of Michigan has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *See United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020) (citations removed). And, as the Tenth Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *United States v. Saldana*, 807 F. App'x 816, 820-21 (10th Cir. 2020).

The Government agrees that Defendant's circumstances—including his heightened risk for severe complications from Covid-19 based on obesity—may qualify as an "extraordinary" reason for release. It does not address Defendant's Crohn's disease. The Government claims that risk of infection to which Defendant is subject at Elkton FCI is not compelling when considered in conjunction with the basis for his incarceration. The Government focuses on Defendant's underlying criminal activity, his failure to participate in sex offender and drug treatment, the fact that Defendant has at least two and one-half years left on his sentence (if he receives full good-time credit), and its contention that Defendant is dangerous.

The Government cites two cases in support of its contention that Defendant's circumstances are not compelling. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020). The Government asserts the Court is to consider: (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns;" (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2.

The Government argues that Defendant's "original grounds" for his conviction

were both online enticement of a child and receipt of child pornography. *McGowan*, 2020 WL 3867515, at *2. The Government also notes that, unlike the pretrial defendant in *Bothra*,[1] Defendant has been convicted of his offense, not just accused of it. For that reason, the Government contends that the justice system's "essential" interest in finality weighs far stronger against Defendant's release than it did the defendant's release in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989).

The parties disagree about the risk of contracting Covid-19 at Elkton FCI. Defendant points to how bad the virus has spread at the facility and other BOP facilities, whereas the Government notes that there were only five inmates with Covid-19 infections as of February 1, 2021. As of February 11, 2021, there were zero positive inmates – but 30 positive staff – at Elkton FCI. *See* https://www.bop.gov/coronavirus/. The Court is not persuaded that, despite the best efforts by BOP, Elkton FCI is a facility in which conditions are sure to be free of Covid-19 infections or outbreaks to which inmates are susceptible.

Between Defendant's obesity and Crohn's disease, in conjunction with the Covid-19 pandemic, the Court finds that Defendant has demonstrated extraordinary

---

[1] The Government argues that, in *Bothra*, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But, the court found that he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id*. The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release pending trial. *Id*.

and compelling reasons for compassionate release.

Even though Defendant has shown extraordinary and compelling reasons for his release, the Court concludes that a consideration of the § 3553(a) factors requires denial of the compassionate release he seeks. Defendant concedes that his offense was serious, but he asserts that he committed a nonviolent offense from which others would be protected if he were released on home confinement. Defendant cites numerous cases where persons convicted of child pornography offenses were released based on compassionate release motions. *See* ECF 39, PageID.186-88. Defendant argues that:

> In fashioning release conditions, these courts have taken into consideration and mitigated concerns about dangerousness or risk to the community. Courts and probation officers are capable and in-fact implementing supervision of defendants convicted of child pornography defendants with COVID-19 risk factors that not only allow for rehabilitation in a community setting at home but also securing defendants from further health risks.

ECF No. 39, PageID.188.

Defendant submits that he has a good disciplinary record, with no incidents since he was sentenced. He states that the absence of sex offender and drug treatment during his incarceration is not for lack of desire. He suggests the absence of such treatment is due to where the BOP has housed him and the lack of programming during the COVID-19 pandemic. He acknowledges and represents that he would be

8

subject to conditions of release, including being barred from connecting to the Internet. He states that completing the term of his incarceration under home confinement, plus the five years of supervised release, will ensure his compliance, rehabilitation, and community adjustment. Defendant also asks that the Court waive the 14-day quarantine before release from Elkton FCI and impose that period of quarantine at "home."

Defendant represents that, if he is released, he intends to live with his grandmother, Jeanette Owens, and his mother, Shannon Bulmer. Defendant's counsel states that he has confirmed that: (1) Ms. Owens' and Mrs. Bulmer's home is located on Avondale Street, Westland, Michigan 48186; (2) Defendant will have a room to self-quarantine for the recommended fourteen days and live in if he is released and (3) Mrs. Bulmer stressed to counsel that she will ensure that Defendant "get[s] back on his feet." ECF No. 39, PageID.189-90 (citing Exhibits G and H). Defendant's father died while Defendant has been in custody on this case, PSR ¶ 69, so Defendant would physically assist Mrs. Bulmer in the care of Ms. Owens, as needed. Ms. Owens reportedly would financially care for Defendant, although Defendant states that he would try to renew his Commercial Driver License he obtained in 2007, if permitted by the Court.

The Government argues, and the Court agrees, that the factors in 18 U.S.C. § 3553(a) weigh strongly against granting Defendant a compassionate release. The

Government contends that Defendant's actions were even more egregious than the average child pornography offender. The typical child pornography defendant who appears before the Court typically faces charges of possession and/or distribution of child pornography, although some such persons also are charged with the manufacture of child pornography. Defendant, however, not only possessed child pornography involving depictions of children engaged in sex acts with adults, he also possessed such images involving violence. And, even more significantly for purposes of considering his release, Defendant (1) sought out the mother of a minor daughter; (2) communicated with that mother extensively about the ways in which Defendant wanted to engage in sexual acts with (*i.e.*, sexually abuse) the child; and (3) then arranged to meet the woman and her 13 year-old for the purpose of engaging in sexual acts. This attempt was at least the third time he had attempted to set up a meeting with a mother with a minor daughter for the purpose of engaging in sexual acts with both of them.

     The preceding paragraph reflects, in part, Defendant as he appeared before the Court for sentencing. Unfortunately, it seemingly reflects Defendant as he is now. Despite more than seven years of incarceration for the conduct described in the superseding indictment, the PSR, and above, Defendant has not received sex offender treatment (nor drug treatment), as recommended by Court. Although Defendant contends that he has not had the opportunity to access sex offender treatment due to

where he was housed and the Covid-19 pandemic, BOP records indicate those are not the only reasons. Since Defendant has been at Elkton FCI, he declined to participate in sex offender treatment or drug treatment programs. He told BOP psychology staff that he was not interested in those programs. (ECF No. 47, PageID.811 (January 10, 2020, Elkton FCI: "The inmate met with the DAPC today and, prior to beginning an RDAP Diagnostic Interview, indicated that he had no interest in participating in RDAP at this time. He was encouraged to rethink his decision and instructed how to re-apply if he becomes interested in the future."); PageID.813 (May 30, 2019, Elkton FCI: Non-Residential Sex Offender Treatment Program "was explained to the inmate, but he declined to participate in the program."). To date, despite his pedophilia diagnosis, Defendant has not participated in any sex offender treatment or drug treatment, and he is not on a waitlist for either program.

The Government contends that Defendant's risk to the public "has almost certainly increased" since his sentencing. It maintains that the pandemic has caused a shift in how children attend school and interact with the world, as many of their activities have been moved online. As a result, "sexual exploitation offenses [have been] on the rise." *McGowan*, 2020 WL 3867515, at *4; *see also* Olivia Solon, *Child sexual abuse images and online exploitation surge during pandemic*, NBC News, April 23, 2020; Sarah Needleman, *As children spend more time online, predators follow*, Wall Street Journal, May 31, 2020 (subscription required but available on

Lexis). Although the Court cannot conclude that Defendant's risk to the public has increased since his sentencing, the Court certainly finds no evidence that Defendant is less of a danger to the public now than he was at sentencing.

For the reasons set forth above, the Court does not find persuasive Defendant's arguments that home confinement will enable him to get sex offender and drug treatment via telehealth, preclude him from internet usage for many years, and/or sufficiently protect the community. When evaluating Defendant's motion and considering the Section 3553(a) factors, the Court concludes that Defendant has failed to establish that those factors support or warrant a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The Court notes, in particular, the nature and circumstances of the offenses charged. The Court finds that the offenses were very serious, that Defendant did pose a risk of danger to the community, and that Defendant continues to pose a risk of danger to the community if he is released early. The Court holds that the imposed sentence of 135 months was reasonable and should not be reduced, and Defendant has not convinced the Court that the balance of his sentence should be served under home confinement.

For those reasons, the Court denies Defendant a compassionate release due to the COVID-19 pandemic.

**IV. Conclusion**

Accordingly,

IT IS ORDERED that Defendant's Motion for Compassionate Release [ECF No. 39] is DENIED.

IT IS ORDERED.

s/Denise Page Hood<br>DENISE PAGE HOOD<br>UNITED STATES DISTRICT JUDGE

Dated: March 23, 2021